# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **TIFFANY WEDGEWORTH,** ] | |
| ] | |
| Petitioner, ] | Civil Action No. |
| ] | **2:19-CV-08039-KOB** |
| v. ] | |
| ] | **Associated Criminal Case** |
| **UNITED STATES OF AMERICA,** ] | **2:07-CR-515-KOB-GMB** |
| ] | |
| **Defendant.** ] | |

## MEMORANDUM OPINION

This matter comes before the court on Petitioner Tiffany Wedgeworth's motion to vacate filed pursuant to 28 U.S.C. § 2255 (doc. 1). After Ms. Wedgeworth completed her original fifty-four-month sentence for her conviction for bank fraud and aggravated identity theft, the court *twice* revoked her supervised release because of her repeated violations and sentenced her to additional time in custody. (Crim. Docs. 22, 37, & 62). The latest supervised release revocation sentence of thirty-six months imprisonment imposed on October 25, 2018 is the subject of her current § 2255 motion.

Ms. Wedgeworth contends that the court should vacate her revocation sentence based on two ineffective assistance of counsel claims: (1) her revocation hearing counsel provided ineffective assistance of counsel when he argued for a sentence of twelve months and a day instead of the twenty-four-month sentence to

1

which she claims the Government had agreed; and (2) her counsel was ineffective for failing to follow her direct instructions to appeal her revocation sentence. (Doc. 1).

The court appointed counsel to represent her and held an evidentiary hearing on September 9, 2020 on both claims. As stated on the record during the evidentiary hearing and for the following reasons, the court DENIES Ms. Wedgeworth's § 2255 motion on both claims.

## BACKGROUND

**Indictment and Conviction**

On February 20, 2008, Ms. Wedgeworth pled guilty to three counts of bank fraud, two counts of aggravated identity theft, and one count of being a felon in possession of a gun; the court sentenced her to fifty-four months imprisonment, followed by sixty months of supervised release. (Crim. Docs. 13 & 22).

**First Revocation of Supervised Release**

After serving two-and-a-half years of her five-year supervised release sentence that began in November 2011, the court revoked her supervised release on May 6, 2014 for committing another identity theft and sentenced her to thirty-six-months imprisonment, followed by twenty-four months of supervised release. (Crim. Doc. 37).

**Second Revocation of Supervised Release**

Ms. Wedgeworth began her second round of supervised release on September 9, 2016, and by November 13, 2017, the court had to place her on home confinement for two months because she traveled outside the district on several occasions without consent. (Crim. Docs. 50 & 51). Then, about nine months later, on August 30, 2018, the United States Probation Office sought revocation of Ms. Wedgeworth's supervised release because she *again* engaged in identity theft by using her aunt's identity to obtain a credit card and student loans, destroying her aunt's credit.

At the initial appearance, the court appointed the Office of the Federal Public Defender to represent Ms. Wedgeworth. AFPD Ebony Howard appeared as counsel of record[1] and represented Ms. Wedgeworth at the detention hearing and preliminary revocation hearing. (Crim. Docs. 56 & 72).

At the final revocation hearing on October 15, 2018, AFPD Adam Danneman[2] represented Ms. Wedgeworth because Ms. Howard was unable to attend. (Crim. Doc. 72). The court asked Ms. Wedgeworth if she had read the petition and violation worksheet and discussed them with her attorney, and Ms. Wedgeworth responded "Yes, ma'am." After Mr. Danneman stipulated that the Government could meet its burden to prove the allegations in the petition by a preponderance of the evidence, the court found that "revocation would be

---

[1] Ms. Howard no longer works for the FPDO.
[2] Mr. Danneman no longer works for the FPDO.

appropriate."  (Crim. Doc. 71 at 3-5).

The court heard argument from Mr. Danneman, in which he asked the court to sentence Ms. Wedgeworth to twelve months and a day as a reasonable consequence for the revocation.  AUSA Brad Felton argued that he and Probation Officer Melissa Torres recommended the maximum sentence of thirty-six months because of Ms. Wedgeworth's continued disregard for the law.

Sadie Lewis, Ms. Wedgeworth's elderly aunt, testified that she was the victim of Ms. Wedgeworth's identity theft; that Ms. Wedgeworth put an "unauthorized credit card" in Ms. Lewis' name for $14,000.00; that Ms. Wedgeworth put student loans in Ms. Lewis' name; that Ms. Wedgeworth ruined Ms. Lewis' credit; that "Ms. Wedgeworth is just a criminal"; and that Ms. Wedgeworth has done the same conduct to Ms. Wedgeworth's mother, father, stepmother, and great aunt and "she's not going to stop."  (Crim. Doc. 71 at 10).

The court sentenced Ms. Wedgeworth to the maximum punishment of 36 months imprisonment with no term of supervised release to follow.  The court reached its decision after considering the sentencing factors in 18 U.S.C. § 3553(a), including the nature and circumstances of the offense, and finding that Ms. Wedgeworth's *repeated* criminal conduct even while on supervised release warranted the maximum sentence possible.  The court noted that Ms. Wedgeworth "repeatedly engages in the same kind of conduct" and "has a career of taking

advantage of other people for her own personal gain." The court noted that "the only time that the public and even her family are protected from her identity theft and all the consequences of it is when she's in custody." (Crim. Doc. 71 at 11-13).

The court advised Ms. Wedgeworth of her right to appeal within fourteen days of the judgment. The court entered its judgment on October 25, 2018; so, Ms. Wedgeworth had until November 8, 2018 to appeal her sentence. (Crim. Docs. 62 & 71 at 14).

Mr. Danneman informed the court at the final revocation hearing that Ms. Wedgeworth was scheduled for surgery and asked the court to allow her thirty days before she had to report for her sentence. The court allowed Ms. Wedgeworth to remain out on bond and ordered Ms. Wedgeworth to report to the designated facility to begin her term of imprisonment by November 15, 2018. (Crim. Doc. 62 & 71).

Before Ms. Wedgeworth was to report to the designated facility, her Probation Officer filed a motion to revoke her bond because Ms. Wedgeworth did not have surgery, but instead "attended the Magic City Classic after having her electronic monitoring bracelet removed for the surgery." (Crim. Doc. 63). AFPD Allison Case represented Ms. Wedgeworth at the bond hearing on November 6, 2018; Ms. Wedgeworth waived her right to a formal bond-revocation proceeding and began serving her 36-month sentence for her second revocation of supervised

release that day. (Crim. Doc. 65).

Ms. Wedgeworth did not appeal that sentence.

## § 2255 PROCEEDING

Ms. Wedgeworth wrote a letter to the court dated October 8, 2019, in which she stated she wanted to "inform the court of 'ineffective assistance of counsel' and to seek relief [from her] sentence." She stated that she did not have "resources to formally file a Motion 2255 so I was instructed to write the court[] a letter explaining my reasoning for wanting to file a 2255." (Doc. 1).

In her letter, Mr. Wedgeworth contends that the court should vacate her revocation sentence based on two IAC claims: (1) her revocation hearing counsel provided ineffective assistance of counsel when he argued for a sentence of twelve months and a day instead of the twenty-four-month sentence to which she claims the Government and her Probation Officer had agreed; and (2) her counsel was ineffective for failing to follow her direct instructions to appeal her revocation sentence. (Doc. 1).

Because Ms. Wedgeworth clearly asked for relief from her sentence and set out two specific IAC grounds for her § 2255 motion, the court construed her letter as a motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255 and ordered the Government to show cause why the court should not grant the motion. (Docs. 1 & 2).

The Government responded and argued that the court should deny Ms. Wedgeworth's IAC claim regarding Mr. Danneman arguing for twelve months and a day because she can show no prejudice; but the Government stated that the court "should grant an evidentiary hearing to consider whether counsel rendered ineffective assistance of counsel by failing to appeal Wedgeworth's revocation judgment, despite her instructions to do so." (Doc. 11).

The court appointed Gregory Reid as counsel for Ms. Wedgeworth and gave him an opportunity to file an amended motion to vacate by April 3, 2020. (Doc. 12 & 15). Mr. Reid requested additional time to file an amended motion to vacate, and the court extended the deadline until June 29, 2020. (Docs. 16 & 17). Mr. Reid again requested additional time to file an amended motion, and the court extended his time to file one until July 30, 2020. (Docs. 22 & 23). Mr. Reid informed the court via email on August 5, 2020 that he did not plan to file an amended motion to vacate.

**§ 2255 Evidentiary Hearing**

The court held an evidentiary hearing via ZOOM, with Ms. Wedgeworth's consent, on September 9, 2020. Ms. Wedgeworth, her attorney Mr. Reid, and AUSA Melissa Atwood participated in the ZOOM evidentiary hearing. Ms. Wedgeworth testified first, and then the Government called as witnesses Ebony Howard, Adam Danneman, and Allison Case, the attorneys who represented Ms.

Wedgeworth in relation to the revocation of supervised release that is the subject of this § 2255 action.

*Testimony of Ms. Wedgeworth*

Ms. Wedgeworth testified that Ms. Howard met with her one time in person and five or six times via telephone before the October 15, 2018 final revocation hearing and discussed how much prison time Ms. Wedgeworth might receive for her violation of supervised release. Ms. Wedgeworth said that Ms. Howard told her that her Probation Officer and the AUSA were "pushing out basically twenty-four months," and she was "o.k." with twenty-four months. She admitted on cross examination that twenty-four months was not a "promise." Ms. Wedgeworth stated that Ms. Howard did not discuss anything with her about a "statutory maximum" prison term that she could receive.

Ms. Wedgeworth testified that she found out the day before her final revocation hearing that Mr. Danneman would stand in for Ms. Howard.[3] She testified that Mr. Danneman told her that he "got everything from Ms. Howard," and that he was going to "ask the judge for a year and a day." She told Mr. Danneman to not ask for a year and day because she did not want to upset Judge Bowdre. But he went against her wishes, asked for twelve months and a day, and

---

[3] Ms. Wedgeworth indicated in her § 2255 motion that, on the morning of the final revocation hearing on October 15, 2018, Ms. Howard texted Ms. Wedgeworth and told her that Mr. Danneman would stand in for her. But at the hearing, she testified that she found out the day before that Mr. Danneman would take Ms. Howard's place.

the AUSA asked for the maximum of thirty-six months for her violation.

Ms. Wedgeworth testified that she did not mention to Mr. Danneman or anyone else before leaving her final revocation hearing that she wanted to appeal. She said that about an hour after the revocation hearing she called Ms. Howard but she did not answer. The next day while Ms. Wedgeworth was on her lunch break at work, she got in touch with Ms. Howard on the phone and told her that she thought that twenty-four months was the agreement between the U.S. Attorney and her probation officer. Ms. Wedgeworth testified that Ms. Howard said thirty-six months was the statutory maximum, and that she told Ms. Howard that she wanted to appeal "because that's not what you said."

Ms. Wedgeworth also said she again told Ms. Howard about a week later that she wanted to appeal. But after that Ms. Wedgeworth "was told Ebony didn't work at the office anymore." Ms. Wedgeworth also said that a few weeks later she received a letter that included a copy of the judgment and advised her of her right to appeal within fourteen days of that judgment, but she could not remember who sent the letter to her.

Ms. Wedgeworth testified that, at her bond revocation hearing on November 6, 2018, she did not tell Ms. Case that she wanted to appeal because "I was out of that time frame" to appeal.

Ms. Wedgeworth said she appreciated the hearing on her § 2255 motion, but

9

because her sentence was almost completed, "it's kind of futile right now." She admitted that she knew the court has the final say in her sentence, not the attorney; that her bond was revoked because she had manufactured some fraudulent documents "to show that I had the surgery even though I didn't"; and that she lied to her probation officer and the court about having surgery when she asked to remain on bond after the revocation hearing.

*Testimony of Ebony Howard*

Ms. Howard testified that she had one in-person meeting with Ms. Wedgeworth and five or six phone calls with her before the final revocation hearing. She recommended that Ms. Wedgeworth stipulate to the allegations in the petition and discussed with her "the numbers of months that she would be comfortable asking for," which was twenty-four months. Ms. Howard testified that no joint agreement about a twenty-four-month sentence existed between herself, probation, and the Government, and that she did not tell Ms. Wedgeworth that such an agreement existed.

She also testified that she spoke with Ms. Wedgeworth after the final revocation hearing and that she was not happy about receiving a thirty-six-month sentence. Ms. Howard said she offered to reach out to the AUSA "to ask if he could determine if the government would consider not pursuing charges against her stemming from the allegations in the petition." Ms. Howard testified that she sent

Ms. Wedgeworth a letter the day the court entered her judgment advising her that she had fourteen days to appeal her sentence. Ms. Howard testified that Ms. Wedgeworth never told her that she wanted to appeal, and if she had done so, Ms. Howard "would have notified the attorney in the office to engage in appellate court work and those attorneys are Allison Case and Toby Smith." Ms. Howard also stated that she would have "informed her paralegal, Lori Dillishaw, and she would have immediately gone about the process of preparing a notice to file [a notice of appeal] at the appropriate time."

*Testimony of Adam Danneman*

Mr. Danneman testified that he volunteered to represent Ms. Wedgeworth at the final revocation hearing because he previously represented her "before Judge Nail in the Jefferson County Circuit Court." He said Ms. Howard told him Ms. Wedgeworth was going to stipulate to the "basis of the revocation," but "there was not an agreement in the case as to the amount of time she was to be potentially facing." He stated that Ms. Wedgeworth did indicate to him that "there was going to be a joint recommendation of twenty-four months," but that Ms. Howard said no agreement existed.

On the day of the hearing, he talked to probation and the AUSA and found out that they were asking for the statutory maximum of thirty-six months imprisonment. Mr. Danneman testified that Ms. Wedgeworth was "upset" when

11

he told her about their recommendation because she thought the agreement was for twenty-four months. He stated that she wanted him to argue for twenty-four months, but, because no agreement existed, he was not "bound to ask for twenty-four months." He decided to ask the court to sentence to Ms. Wedgeworth to twelve months and a day because Ms. Wedgeworth was "four days short of completing her supervised release"; the allegations in the petition were based on new criminal conduct that was uncharged; and his experience with the court was it would listen to both sides and ultimately make a fair decision

    Mr. Danneman testified that, after the revocation hearing, he told Ms. Wedgeworth that she had fourteen days to appeal, but Ms. Wedgeworth did not respond in any way that she wanted to appeal or did not want to appeal. Ms. Wedgeworth left because she was upset. But he testified that if Ms. Wedgeworth had told him to appeal he would have recalled that conversation, and immediately would have notified Allison Case or Toby Smith, who are both in the appellate division.

    He said that Ms. Wedgeworth called him from prison months later and asked for an extension from the court for a program she was in for pregnant mothers and he passed that information to Allison Case who had represented her at her bond revocation hearing.

*Testimony of Allison Case*

Ms. Case testified that she represented Ms. Wedgeworth at her bond revocation hearing on November 6, 2018 and that "there was no discussion at the bond revocation hearing about any appeal rights or appeal requests."

## DISCUSSION

The court begins with the standard that Ms. Wedgeworth *must* meet to prevail on any of her ineffective of counsel claims. Under the well-settled two-part test established in *Strickland* to show that she was deprived of her Sixth Amendment right to effective assistance of counsel, a petitioner must demonstrate that (1) her counsel's performance fell below an objective standard of reasonableness; *and* (2) she suffered prejudice because of that deficient performance. *Strickland*, *v. Washington*, 466 U.S. 668, 687-88, 692 (1984).

## Claim 1: Mr. Danneman's Request for Twelve Months and a Day

Ms. Wedgeworth claims that Mr. Danneman, her revocation hearing counsel, provided ineffective assistance when he argued for a sentence of twelve months and a day instead of the twenty-four-month sentence to which she claims the Government and her Probation Officer had agreed.

To succeed, a petitioner must establish *both* the deficient performance and prejudice prongs of *Strickland*. And a petitioner cannot satisfy either of these two elements with conclusory or unsupported allegations. *Tejada v. Dugger*, 941 F.2d

13

1551, 1559 (11th Cir. 1991). Rather, the petitioner must allege "reasonably specific, non-conclusory facts that, if true, would entitle [her] to relief." *Aron v. United States*, 291 F.3d 708, 715 n.6 (11th Cir. 2002).

The court need not address both deficient performance and prejudice if the movant clearly fails to satisfy one of the required these prongs. *Id*. at 697. In fact, the Supreme court stated that courts will "often" find it "easier to dispose of an ineffective assistance of counsel claim on the ground of lack of sufficient prejudice" than by examining "whether counsel's performance was deficient." *Strickland*, 466 U.S. at 697.

Under the first prong of the *Strickland* test—the "reasonableness" prong—the court must presume that petitioner's counsel acted reasonably. *Strickland*, 466 U.S. at 690; *Williams v. Head*, 185 F.3d 1223, 1228 (11th Cir. 1999). To overcome that presumption, a petitioner "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland*, 466 U.S. at 690. If "some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial," then counsel's performance did not fall below an objective standard of reasonableness. *Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995) (*en banc*).

Both Ms. Howard and Mr. Danneman testified that no agreement existed with the AUSA and the Probation Officer for Ms. Wedgeworth to receive twenty-

14

four-months imprisonment for her violation, and Ms. Wedgeworth agreed that she was not "promised" a sentence of twenty-four months. So, Mr. Danneman asking the court for twelve months and a day was not unreasonable under these facts. But even assuming *arguendo* that Ms. Wedgeworth could *somehow* meet this first prong, her claim fails because she cannot meet *Strickland*'s prejudice prong.

Under the "prejudice" prong, prejudice arises only if the petitioner shows "a reasonable probability [exists] that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

Ms. Wedgeworth cannot show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *See Strickland*, 466 U.S. at 694. She has presented no facts to show that Mr. Danneman's request for twelve months and a day sentence prejudiced her by increasing the length of her sentence. Assuming the existence of an agreement for a twenty-four-month sentence, perhaps Mr. Danneman's request caused the AUSA to change his recommendation. But, Ms. Wedgeworth ignores one very important truth—the court has the ultimate say in the final sentence regardless of any agreement between the parties.

And based on the egregious circumstances of Ms. Wedgeworth's repeated

conduct, the sentencing record reflects that the maximum sentence of thirty-six months was the appropriate sentence.  Her continuous blatant disregard for the conditions of her supervised release and her additional identity theft conduct while on supervised release warranted the maximum sentence available. And the court's strong language during the revocation hearing support that the court would have sentenced her to the statutory maximum of thirty-six months even if the parties had agreed to a lesser sentence.

Ms. Wedgeworth has not and cannot show a reasonable probability that the court would have sentenced her to less than thirty-six months imprisonment had Mr. Danneman argued for a twenty-four-month sentence rather than a year and a day. As the court stated at the hearing, its decision to sentence Ms. Wedgeworth to the statutory maximum sentence of thirty-six months had nothing to do with Mr. Danneman's request.  But the court's sentence had everything to do with Ms. Wedgeworth's repeated disregard for the law even while on supervised release. The court imposed the statutory maximum sentence and would have done so even if an agreement for twenty-four months existed.  Ms. Wedgeworth cannot show otherwise.

So, the court will DENY claim 1 because Ms. Wedgeworth cannot show prejudice.

**Claim 2: Failure to File an Appeal as Instructed**

Based on Ms. Wedgeworth's testimony at the hearing, the only person she allegedly instructed to file an appeal was Ms. Howard. The Supreme Court has "long held that a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable" under the first prong of the *Strickland* test. *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (citing *Peguero v. United States*, 526 U.S. 23, 28 (1999), and *Rodriquez v. United States*, 395 U.S. 327 (1969)). So, if Ms. Wedgeworth instructed her counsel to file an appeal, counsel's failure to file an appeal would be *per se* unreasonable and Ms. Wedgeworth would satisfy the first element of the *Strickland* test. *See Flores-Ortega*, 528 U.S. at 477.

Under the second prong of the *Strickland* test, a lawyer's failure to file an appeal prejudices a defendant when "counsel's constitutionally deficient performance deprives a defendant of an appeal that he otherwise would have taken . . . ." *Flores-Ortega*, 528 U.S. at 484. To show prejudice, "a defendant who shows that his attorney has ignored his wishes and failed to appeal his case need *only* demonstrate that, but for the attorney's deficient performance, he would have appealed." *Gomez-Diaz*, 433 F.3d at 792 (citing *Flores-Ortega*, 528 U.S. at 484).

In addition, a petitioner does *not* have to demonstrate the viability or merits of her potential appeal to establish that her lawyer's failure to file an appeal as

17

instructed prejudiced her. *Flores-Ortega*, 528 U.S. at 486; *Montemoino v. United States*, 68 F.3d 416, 417 (11th Cir. 1995); *Gray v. U.S.*, 834 F.2d 957, 967 (11th Cir. 1987).

Ms. Wedgeworth claims that she instructed Ms. Howard to file an appeal in her case on two different occasions. But Ms. Howard testified that Ms. Wedgeworth never instructed her to file an appeal. So, the court is left with the task of deciding who is more credible—Ms. Wedgeworth or Ms. Howard.

As the court stated on the record, Ms. Wedgeworth's career of fraudulent activity carries with it a lack of credibility and a lack of integrity. Ms. Wedgeworth admittedly has a history of lying to the court and her probation office. However, Ms. Howard, in her past dealings with this court, does not have that same track record. Although the court has only had a few cases with Ms. Howard, it has found her to be very candid and above board in her dealings with the court. When the court weighs the credibility of Ms. Howard with that of Ms. Wedgeworth, the scale tips heavily in favor of Ms. Howard and her testimony that Ms. Wedgeworth never instructed her to appeal.

And further, Ms. Wedgeworth admitted that she did not ask Ms. Case about an appeal at the bond revocation hearing on November 6, 2018—a date still within the fourteen days in which to appeal.

Because the court finds that Ms. Wedgeworth's § 2255 motion does not

carry the credibility necessary to grant it, the court will deny her habeas motion on this issue.

## **CONCLUSION**

By separate Order, the court will **DENY** Ms. Wedgeworth's § 2255 habeas motion on both of her claims.

**DONE** and **ORDERED** this 25th day of September, 2020.

_____
**KARON OWEN BOWDRE**
UNITED STATES DISTRICT JUDGE